**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ROHAN DHRUVA,** *et al*., for themselves and others similarly situated, | * | |
| | * | Civil No. SAG-23-02265 |
| Plaintiffs. | | |
| v. | * | **OPPOSITION TO MOTION TO COMPEL ARBITRATION AND** |
| **CURIOSITYSTREAM INC.**, | * | **DISMISS** |
| Defendant. | | |
| | * | |

## I. INTRODUCTION

"Long gone are the days when two parties might sit down across a wooden table and sign with their own pens the same sheet of paper." *Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC*, 993 F.3d 253, 260 (4th Cir. 2021). Nowadays, "in some cases, an electronic click can suffice to signify the acceptance of a contract." *Id.* (cleaned up). However, these contractual offers and acceptances fly through cyberspace "with such speed and alacrity that it becomes easy to get sloppy." *Id.* And that is exactly what happened here.

It is relatively straightforward to design a mechanism for consumers to manifest assent to a contract made through the internet. For example, Defendant CuriosityStream Inc. ("Defendant" or "CuriosityStream") could have simply designed a checkbox or button that states "I agree," with a reasonably conspicuous hyperlink to its "Terms of Use." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 463 (2021) (discussing the differences between *clickwrap*, *sign-in-wrap*, and *browsewrap* agreements). CuriosityStream did not do that. Instead, it told plaintiffs: "By subscribing … you agree you've read our terms." Second Amended Complaint ("SAC") ¶ 35 (underlining added). But agreeing to read something does not mean agreeing to what it says. Judges and lawyers know this better than most; their jobs require them to "read" things they *do not* "agree" with all the time. Because the sign-up screens at issue here never explicitly advised users they were agreeing to arbitration, its screens were textbook *browsewrap* agreements. *Sellers*, 73 Cal. App. 5th at 470. Those are "unenforceable per se" under applicable California law. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 868, n.4 (9th Cir. 2022) (concurrence). CuriosityStream's motion should be denied.

## II. ARGUMENT

### A. Arbitration Agreements Are Analyzed Under Traditional Contract Law

Under the FAA, "arbitration agreements [are] as enforceable as other contracts, but not more so." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022). The "policy favoring arbitration" is "merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate" and that "the federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Id*. "When a challenge to the existence of a contractual obligation is properly raised, 'the court determines whether a valid arbitration agreement exists' 'before referring a dispute to an arbitrator.'" *Rogers v. Tug Hill Operating, LLC*, 76 F.4th 279, 286 (4th Cir. 2023).

Even though Defendant CuriosityStream is headquartered in the state of Maryland, it was not properly registered to do business in Maryland when this action was first filed.[1] *See Piazza v. EMPI, Inc.*, 2008 WL 590494, at *4 (E.D. Cal. Feb. 29, 2008) (noting that courts may take "judicial notice [of corporate litigant's] registration status with the … Secretary of State under FRE 201(c)."). Even so, its failure to file a registration statement "does not affect the validity of any contract to which the corporation is a party." Md. Code Ann., Corps. & Ass'ns § 7-305.

### B. California Law Applies To the Issue Of Contract Formation

To determine whether an agreement to arbitrate was formed, courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc.*

[1] A different company previously named "CuriosityStream Inc." *is* registered to business in Maryland, but after a couple name changes, it now goes by the name "Curiosity Inc."—the originally-named defendant in this action. As both past and present "CuriosityStream Inc."s in this action insist that the company presently known as CuriosityStream Inc. is the real party in interest, Plaintiffs agreed to file their SAC to name CuriosityStream Inc. as the Defendant. ECF No. 19.

*v. Kaplan*, 514 U.S. 938, 944 (1995). Here, CuriosityStream contends that Maryland law applies to the question of whether two Californians agreed to its hyperlinked terms. *See* Memorandum in Support of Motion to Compel Arbitration and Dismiss ("MTC") at 7. Yet, "[i]n a federal question case that incorporates a state law issue, such as contract formation, a district court applies the choice-of-law rules of the state in which it sits unless a compelling federal interest directs otherwise. Maryland follows the *lex loci contractus* rule, under which the law of the jurisdiction where the contract was made controls its validity and construction. For choice-of-law purposes, a contract is made where the last act necessary to make the contract binding occurs." *Brittney Gobble Photography, LLC v. Sinclair Broad. Grp., Inc.*, 2021 WL 5359671, at *15 (D. Md. Nov. 17, 2021) (Gallagher, J.) (internal quotation marks and citations omitted). CuriosityStream argues that "by clicking a button" on its website, Plaintiffs agreed to its hyperlinked terms. MTC at 2. Because this button click was the "last act necessary to make the contract binding," and because both Plaintiffs resided in California "at all relevant times," SAC, ¶¶ 5-6, including when they clicked this button, California law applies.

### C. Plaintiffs Never Formed A Contract With CuriosityStream By Clicking A Button

"Under California law and generally applicable principles of contract law, the burden is on [CuriosityStream] as the party seeking arbitration to show that it provided notice of [its] TOU and that there was mutual assent to the contractual agreement to arbitrate." *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099 (9th Cir. 2023). Because CuriosityStream provides no evidence that either Plaintiff *actually knew* about its terms, under California law, it can only establish contract formation under an inquiry notice theory. "[A]n enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some

action, such as clicking a button … that unambiguously manifests his or her assent to those terms." *Berman*, 30 F.4th at 856. Because CuriosityStream's motion provides no analysis of the second *Berman* element, Plaintiffs will address it first.

### 1. **Plaintiffs' Button Click Does Not Constitute Assent Because There Is No Indication What The Button Click Means**

CuriosityStream argues that Plaintiffs manifested their assent because "an electronic 'click' can suffice to signify the acceptance of a contract." MTC at 8 (citation omitted).[2] "[B]ut merely clicking on a button on a webpage, viewed in the abstract, does not signify a user's agreement to anything." *Berman*, 30 F.4th at 857. Under California law, "[a] user's click of a button can be construed as an unambiguous manifestation of assent *only if* the user is *explicitly advised* that the act of clicking will constitute assent to the terms and conditions of an agreement." *Id*. (emphasis added).

Here, however, Plaintiffs were not "explicitly advised that the act of clicking will constitute assent to the terms." Instead, as shown on the next page,[3] Plaintiffs were advised that: "By subscribing to Curiosity Stream, you agree that you've read our Terms of Use." Compl. ¶ 35 (underlining added).

---

[2] CuriosityStream does not specify in its motion *which* button click that was, so Plaintiffs assume it is referring to the "Sign up now" button of the webpage shown in Figure 10 of the SAC.

[3] The screenshots on the next page are of the same webpage shown in Figure 10 of the SAC, https://curiositystream.com/payment-step, so they are properly considered under the incorporation by reference doctrine. "[F]ederal courts reviewing a 12(b)(6) motion … may consider documents incorporated into a complaint by reference without converting the motion into a motion for summary judgment." *Connolly v. Lanham*, 2023 WL 4932870, at *4 (D. Md. Aug. 2, 2023) (Gallagher, J.).







There are a few problems with this textual notice. First, agreeing to "read" something is not the same as "agreeing" to what it says. "Merely agreeing … to 'read, observe and abide by' the contents of the [Terms of Use] that 'is designed for quick reference and general information' does not constitute a contract and does not bind the [consumer] to arbitration." *Mendoza v. Trans Valley Transp.*, 75 Cal. App. 5th 748, 786 (2022). Accordingly, because Plaintiffs were not "explicitly advised that the act [of] clicking" the "Sign up now" button in the screenshot above would manifest assent to Terms of Use, an agreement to arbitrate was never formed. *Berman*, 30 F.4th at 858.[4]

Second, Plaintiffs are not "explicitly advised that the act clicking" any particular button signifies assent. Instead, they are told that "[b]y subscribing," they have "read" CuriosityStream's terms at some unspecified point in the past. But the word "subscribing" is

[4] CuriosityStream might argue that by carefully reading the terms, consumers would discover the arbitration clause. But as *Berman* notes, "[t]he question before us is not whether [plaintiffs] may have been aware of the mandatory arbitration provision in particular, but rather whether they can be deemed to have manifested assent to any of the terms and conditions in the first place." *Id.*

vague and does not necessarily mean clicking a button. Reasonable consumers could believe they *were already subscribed*, because, on the immediately preceding screen, they created an account with CuriosityStream by providing it with their email address and creating a password. *See* Silva Decl., ¶ 6, ECF. No. 21-2 at 3. Reasonable consumers could also believe "subscribing" means clicking the Google "Pay" button, the "Sign up now" button, inputting one's credit card information, or all the above. CuriosityStream might argue that within the context of the sign-up process as a whole, "subscribing" *implies* a user completes the sign-up process. But something that is *implicit*, by definition, cannot be *explicit*. And *Berman* requires *explicitness*.

Similarly, in *Treinish v. iFit Inc.*, a court held that a consumer "did not manifest any assent to [a defendant's] terms" when "he clicked [an] 'Apply Now'" button where the textual notice above the button said: "By paying with NordicTrack financing, you agree to NordicTrack's Terms of Use." 2023 WL 2230431, at *1 and *4 (C.D. Cal. Feb. 2, 2023). Again, payment probably implies some kind of application, but it does not explicitly say so. A screenshot is reproduced below.




*Treinish v. iFit Inc.*, Case No. 2:22-cv-04687-DMG-SK, ECF No. 42-3 (C.D. Cal.).[5]

[5] This screenshot is taken from a brief in the *Treinish* case and has the same image resolution as it appears in the *Treinish* brief.

The precise language of a textual notice given to consumers matters a great deal. "[B]ecause 'online providers have complete control over the design of their websites,' 'the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers.'" *Berman*, 30 F.4th at 857 (internal citations omitted). And that "notice must *explicitly* notify a user of the legal significance of the action she must take to enter into a contractual agreement." *Id*. (emphasis added). Thus, in *Berman*, the Ninth Circuit held that even a textual notice *much more explicit* than the one here could not create an enforceable contract.




*Berman*, 30 F.4th at 858, Appendix A.

Even though the text directly above the "Continue" button advised users they were "agree[ing] to the Terms & Conditions which includes mandatory arbitration"—unlike the notice here—the court in *Berman* held the notice *did not* form a contract under California law. 30 F.4th at 858. "[T]he presence of the words 'which includes mandatory arbitration' in the notice is of no relevance to the outcome." *Id*. What is more, the textual notice in *Berman* was in much closer "proximity to the 'continue' button" than CuriosityStream's textual notice is to the "Sign up now" button here, which is separated by multiple entry fields for credit card information. "But 'even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice.'" *Id*. In the end, all that mattered in

*Berman* was the precise language of the notice. *Id*. And because that language "did not explicitly inform [plaintiffs] that by clicking on the 'continue' button they would be bound by the terms," no agreement to arbitrate was ever formed. *Id*.

The rule is not very onerous. After all, Defendant can satisfy the *Berman* rule "by including language such as, 'By clicking the Continue >> button, you agree to the Terms & Conditions.'" 30 F.4th at 858. But it did not do that. As the Fourth Circuit explains, "[t]he electronic age has not made the formalities of contract less crucial, but more so … In the past, parties meeting face-to-face might have interacted with other people who could testify as to disputed facts over contract formation. When personal contact (and perhaps extrinsic evidence) is reduced … [a]ll we are left to rest on are the formalities." *Rowland*, *supra*, 993 F.3d at 260. And here, CuriosityStream did not adhere to those formalities.

**2. <u>Plaintiffs Also Cannot Manifest Assent Passively</u>**

CuriosityStream also may try to argue that if a consumer eventually reads its Terms of Use, she will discover that a user's "affirmative act of using and/or registering with the sites and if you are a user based in Germany, accepting the terms of use signifies that you agree to these terms of use." *See* Silva Decl., Ex. C, ECF No. 21-3 at 2. But if a consumer needs to navigate to *another* webpage and carefully read *another* twenty-one-page legal document just to understand what the textual notice on the first page says, then that textual notice cannot be explicit. In fact, this kind of Russian nesting doll notice is textbook *browsewrap*. "[B]rowsewrap agreements do not require users to affirmatively click a button to confirm their assent to the agreement's terms; instead, a user's assent is *inferred* from his or her use of the website." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 463 (2021) (*quoting Long v. Provide Com., Inc*., 245 Cal. App. 4th 855, 858 (2016)) (emphasis added). And here, neither plaintiffs were "require[d] … to

affirmatively click a button to confirm their assent to the … terms." They only had to click a button saying they read the terms at some unspecified time in the past. "[A] browsewrap agreement…is not sufficient to bind the consumer." *Id*. at 470. So, "pending further word from the California appellate courts, browsewrap agreements are unenforceable per se." *Berman*, 30 F.4th at 868 (concurrence).[6]

### 3. <u>CuriosityStream's Terms Were Not Reasonably Conspicuous</u>

CuriosityStream claims its "consumers completed nearly *identical* online subscription processes" to those in *McDaniel v. Home Box Off. Inc*., 2023 WL 1069849, at *1 (S.D.N.Y. Jan. 27, 2023) and *Graham v. Bloomberg L.P*., 2023 WL 6037974, at *1 (S.D.N.Y. Sept. 15, 2023), where "plaintiffs, represented by the same firm here, [were compelled] to arbitrate." MTC at 8-9 (emphasis in original). Unfortunately, CuriosityStream never includes side-by-side exemplars of these purportedly "nearly *identical*" screens.

Here, CuriosityStream's payment screen actually looks much more like the subscription screen in *Sadlock v. Walt Disney Co*., 2023 WL 4869245, at *9 (N.D. Cal. July 31, 2023), where plaintiffs, represented by the same firm here (*i.e.*, Bursor & Fisher, P.A.), were *not* compelled to arbitrate. A side-by-side comparison is shown on the next page.

[6] At best, CuriosityStream's screen resembles a "*sign-in-wrap* agreement … in which a user signs up to use an internet product or service, and the sign-up screen states that acceptance of a separate agreement is required before the user can access the service." *Sellers*, 73 Cal. App. 5th at 464. *Sellers* cautions that *sign-in-wrap* is much less conspicuous that *clickwrap* because "it is not apparent that the consumer is aware that they are agreeing to contractual terms simply by clicking some other button." *Id*. at 471. *Berman* puts it more bluntly: "website designers who knowingly choose sign-in-wrap … practically invite litigation." 30 F.4th at 868, n.4 (concurrence).







In *Disney*, the court held that under California law, "the screen at issue did not provide reasonably conspicuous notice based on the totality of the circumstances." 2023 WL 4869245, at *9. There, as here, "[t]he paragraph that contains the reference to the Subscriber Agreement is in small font. Furthermore, comparatively, that font size is smaller than that used for other text in

the payment webpage." *Id*. Worse still, "the hyperlink to the 'Subscriber Agreement' is buried in six lines of text and is located five lines away from the 'Agree and Subscribe' button." *Id*. at *10. Likewise here, the hyperlink to CuriosityStream's Terms is also buried within a group of two paragraphs of six lines of text, and is even farther away from the "Sign up now" button. Also, in *Disney*, just as here, "[t]here are a number of other elements on the screen that distract from the reference to the Subscriber Agreement." *Id*. In *Disney*, it was the "description of the Disney bundle," *id*., while here, it is a bright metallic blue box[7] describing the "Smart Bundle Monthly." In both cases, "these elements are all in larger size font and employ design elements such as bolding to catch the eye. Furthermore, the bulk of the remaining screen is devoted to payment for the service being purchased." *Id*. Moreover, the titles of both screens feature an "exhortation" distracting users from the fact a hyperlink to a contract is lurking within it. *Id*. And here, the CuriosityStream title is even more distracting than the one in *Disney*. It is in larger font than anything else on the screen and shouts: "**Fill in your payment information and you're done!**" In fact, this language directs consumers to ignore everything else on the page but their payment information. They can hurry up, be done, and begin watching videos.

To be sure, all this analysis was needed in *Disney* because at least the textual prompt explicitly advised consumers the significance of their button click. *See* 2023 WL 4869245, at *9.




[7] The colors of box vary depending on which plan a user selects and may appear even more distracting. *See* Silva Decl., ¶ 5. The box shown here is the same as the one in the SAC.

Here, however, the Court need not go as far. As noted above, § C.1, CuriosityStream never explained to Plaintiffs what their button clicks meant, so their clicks did not signify assent.

## III. CONCLUSION

CuriosityStream failed to meet its burden of proving that "it provided notice of [its] TOS and that there was mutual assent to the contractual agreement to arbitrate." *Amazon.com, supra*, 65 F.4th at 1099 (holding that plaintiff, represented by the same firm here, was *not* compelled to arbitrate his claims). CuriosityStream's motion to dismiss should be denied.

Dated: October 13, 2023

By: *[/s/ Stefan Bogdanovich]*
Stefan Bogdanovich

L. Timothy Fisher (*pro hac vice*)
Neal J. Deckant (*pro hac vice*)
Stefan Bogdanovich (*pro hac vice*)
**BURSOR & FISHER, P.A.**
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
ndeckant@bursor.com
sbogdanovich@bursor.com

William N. Sinclair (Bar No. 28833)
bsinclair@silvermanthompson.com
**SILVERMAN THOMPSON SLUTKIN & WHITE, LLC**
400 E. Pratt St., Suite 900
Baltimore, MD 21202
Telephone: (410) 385-2225
Facsimile: (410) 547-2432

*Attorneys for Plaintiffs*