**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| ROHAN DHRUVA, et al.<br><br>Plaintiffs,<br><br>v.<br><br>CURIOSITYSTREAM INC.,<br><br>Defendant. | No. 1:23-cv-02265-SAG |

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION**
**TO MOTION TO COMPEL ARBITRATION AND DISMISS**

## I. INTRODUCTION

This case is plain and simple – Plaintiffs entered into a binding arbitration agreement with CuriosityStream by navigating to CuriosityStream's account creation page, choosing a subscription package, entering their information, and clicking a button immediately adjacent to a clear, conspicuous statement informing them that by subscribing, they agreed to those hyperlinked Terms. Plaintiffs now make the argument that they are not bound by these same terms and conditions that mandate individual arbitration because they never manifested assent. Plaintiffs' arguments are not persuasive, and contrary to commonsense principles that were succinctly described in one recent decision:

> The act of contracting for consumer services online is now commonplace in the American economy. Any reasonably-active adult consumer will almost certainly appreciate that by signing up for a particular service, he or she is accepting the terms and conditions of the provider. Notifications to that effect—be they check boxes or hyperlinks—abound. To be sure, few people may take time to actually read the user agreements. But ignorance of the precise terms does not mean that consumers are unaware they are entering contracts by signing up for internet-based services.

*Selden v. Airbnb, Inc.*, No. 16-CV-00933 (CRC), 2016 WL 6476934, at *5 (D.D.C. Nov. 1, 2016), *aff'd*, 4 F.4th 148 (D.C. Cir. 2021). Here, the Court should not allow Plaintiffs to claim such ignorance, nor should the Court countenance Plaintiffs' blatant misrepresentation of the caselaw.[1] Rather, the Court must enforce CuriosityStream's binding arbitration agreement consistent with the Federal Arbitration Act and the countless decisions in both the Fourth and Ninth Circuits that have found similar terms to be enforceable.

## II. ARGUMENT

### A. CuriosityStream has met its burden to show a valid arbitration agreement.

CuriosityStream has met its evidentiary burden to show that Plaintiffs entered into a valid arbitration agreement, including reasonably conspicuous notice and manifestation of assent. The declaration CuriosityStream provided with its initial memorandum showed the uncontested sign-up process Plaintiffs needed to review and complete when they allegedly subscribed to CuriosityStream. Silva Decl. ¶¶ 4–9. These screenshots demonstrated that consumers are provided with conspicuous notice of the Terms of Use, displayed in a clearly contrasting color depicting a hyperlink, immediately before entering their payment information to complete the subscription process.[2]

---

1 The Opposition misrepresents the outcome in *Sadlock*, falsely stating that the plaintiff in that case was *not* compelled to arbitrate – when the opposite is true. *See Sadlock v. Walt Disney Co.*, CIV No. 22-cv-9155-EMC, 2023 WL 4869245, at *1 (N.D. Cal. July 31, 2023) ("the Court hereby **GRANTS** Disney's motion [to compel arbitration]"). This misrepresentation is even more egregious given that the plaintiff was admittedly represented by the same firm. Opp. at 10 ("where plaintiffs [*sic*], represented by the same firm here (*i.e.*, Bursor & Fisher, P.A.), were *not* compelled to arbitrate.") (emphasis in original).

2 Plaintiffs fault CuriosityStream for not providing side-by-side exemplars of the "purportedly 'nearly identical'" screens in HBO and Bloomberg, wherein plaintiffs represented by the same firm were compelled to arbitrate the same VPPA complaints. Opp. at 10. As CuriosityStream explained in its Motion, however, "[a]s can be seen in the *Bloomberg* decision, **which reproduces the online subscription process at issue there in full**, it is nearly identical to CuriosityStream's in all material respects." Mot. at 2 n.1 (emphasis added). Point being,

In an attempt to obfuscate what is an entirely straightforward and industry-standard online subscription process, Plaintiffs make the infantilizing argument that "reasonable consumers" might not understand what "subscribing" means in relation to CuriosityStream's subscription process. Opp. at 6–7.[3] That is, they claim a consumer "could believe" they were already subscribed at step 2 simply by providing an email and creating a password. *Id.* But this is silly: the subscription process is an ***expressly numbered*** process that explicitly tells consumers at the outset, "**Just 3 steps** to the best documentaries on the planet." Reply Decl. of Andre Silva Supp. of Def.'s Mot. Compel Arb. ("Silva Reply Decl.") ¶ 4 (attached). No reasonable person could possibly believe that they had subscribed by the second step on this basis alone. Indeed, on this very step, consumers are informed "Continue to Last Step." Silva Decl. ¶ 6. Of course, a potential subscriber cannot even access "the best documentaries on the planet" – which is the <u>***entire essence***</u> of the subscription – unless and until they complete step 3. Silva Reply Decl. ¶ 6.

And in order to do that, a subscriber cannot merely enter their payment information, as suggested by Plaintiffs, Opp. at 12, but must instead click the final "Sign up now" button once all the required information has been entered. At this point the "Sign up now" button will change

---

CuriosityStream clearly indicated that the full screen Bloomberg subscription screen was accurately reproduced in the very decision CuriosityStream cited. Plaintiffs, by contrast, crop and resize CuriosityStream's full screen subscription page to position it next to the subscription screen analyzed in *Sadlock*. Opp. at 11. The effect, whether intended or not, is to blur and otherwise distort the clear and conspicuous nature of CuriosityStream's disclosures, as accurately reproduced in the Declaration of Andre Silva in Support of Defendant's Motion to Compel Arbitration, ¶ 7 ("Silva Decl.") (Dkt. No. 21-2). Ultimately, when the Court is evaluating CuriosityStream's subscription process, it should disregard Plaintiff's distorted recreation of the subscription screen at issue.

[3] To be clear, Plaintiffs do not dispute any facts set forth in the Silva Declaration or what CuriosityStream's subscription process actually entails. Rather, Plaintiffs (mis)interpret those undisputed facts to argue that they are somehow not bound by the clear Terms of Use – which does not in any way create a triable issue of fact.

color to signify the user can complete the registration process by clicking this button, **and only this button**. Silva Reply Decl. ¶ 6. This bears repeating: this is the only button a subscriber can click to complete the 3-step subscription process in order to access the content to which they are subscribing.

And to get to this final point, a subscriber *must* read past the clear and conspicuous disclosure that "By subscribing to Curiosity Stream, you agree that you've read our **Terms of Use** and **Privacy Policy**." And when Plaintiffs subscribed, the Terms of Use clearly stated at the beginning – in ALL CAPS – that "YOUR AFFIRMATIVE ACT OF USING AND/OR REGISTERING WITH THE SITES SIGNIFIES THAT YOU AGREE TO THESE TERMS OF USE. IF YOU DO NOT AGREE, DO NOT USE AND/OR REGISTER WITH THESE SITES." Silva Decl. Exs. A and B.[4]

That Plaintiffs may not have taken the time to read these Terms does not change the fact that they were, at the very least, on inquiry notice that the Terms of Use applied to their subscription – which is all that is required. While CuriosityStream respectfully details below that Maryland law should apply because that *is* the choice of law in the Terms – it ultimately does not

---

[4] Contrary to Plaintiff's argument, the fact that the disclosure clearly indicates that subscribers have agreed that they have read the Terms of Use, rather than alternatively "agreeing to Terms," is a distinction without a difference. By agreeing that they have read the Terms of Use, they are necessarily agreeing that by registering for the service, they also agree to the Terms of Use. In fact, while Plaintiffs imply CuriosityStream is attempting to hide the ball, and "by carefully reading the terms, consumers would discover the arbitration clause," Opp. at 6 n.4, that completely ignores the structure of the Terms. The very first three paragraphs of the Terms succinctly and clearly inform subscribers 1. These Terms of Use apply to the CuriosityStream website. 2. By affirmatively registering with the website, you are agreeing to the Terms; and if you don't agree, don't register; and 3. "**IMPORTANT NOTICE REGARDING ARBITRATION"** – there is a provision below that "**requires you to arbitrate any claims you may have against CS on an individual basis**." Clearly, *all* the provisions relevant to this dispute are conspicuously disclosed at the very beginning of the Terms in plain English. Plaintiffs are not entitled to their own set of facts, and their suggestion that *CuriosityStream* is attempting to hide key terms should not be well taken.

matter, because *not* reading a contract has never been a valid defense to contract formation in *any* state.[5]

**B. In their opposition, Plaintiffs do not contest, and therefore concede, that they are subject to CuriosityStream's Terms under Fourth Circuit precedent.**

Plaintiffs do not contest, and therefore concede, that they are subject to CuriosityStream's Terms under Maryland and Fourth Circuit precedent. Their motion conspicuously avoids confronting any and all discussion of the multiple Fourth Circuit cases that CuriosityStream cited, as well as the comparable decisions from other jurisdictions, like *HBO* and *Bloomberg*.

In an effort to entirely avoid these decisions, Plaintiffs summarily (and incorrectly) conclude that California law applies to the issue of contract formation. *See* Opp. at 4 (arguing "the law of the jurisdiction **where the contract was made**" applies) (emphasis added). As an initial matter, Plaintiff's argument is self-contradictory because their whole theory is that *no contract was made*.[6] Indeed, relying on the doctrine of *lex loci contractus*, Plaintiffs claim that California

---

[5] To support their argument that "agreeing to read" is not the same thing as "agreeing," Plaintiffs solely rely on the *Mendoza* case, which is easily distinguishable. There, an employer was attempting to enforce a lengthy Employee Handbook that was **expressly represented** by the employer as being strictly informational: "the policies and procedures described in this handbook are for purposes of information only." Indeed, the Handbook went further and expressly provided it was "not intended as a contract of employment." *Mendoza v. Trans Valley Transp.*, 290 Cal. Rptr. 3d 702, 735 (Ct. App. 2022). That is clearly not this case. Rather, here, the Terms of Use are clearly and conspicuously displayed as *Terms of Use* – which any reasonable person will associate with a binding agreement standing alone. And if there is any doubt, as noted above, it is clearly spelled out at the outset of the Terms of Use that they are binding on anyone registering through the website.

[6] Plaintiffs' *claims* are also self-contradictory. On the one hand, they allege to have purchased a subscription to CuriosityStream, as this is a necessary element of any VPPA claim. But on the other hand, they are rejecting the very Terms under which the subscription is offered. If Plaintiffs can disclaim the Terms, then there was never any meeting of the minds, and Plaintiffs have not in fact subscribed to CuriosityStream. *See Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC*, 993 F.3d 253, 259 (4th Cir. 2021) (holding "there was no such meeting of the minds—and thus no contract—because both parties did not agree to the same terms").

law applies because the last act necessary to consummate the contract – wherein Plaintiffs agreed to the hyperlinked terms by clicking a button – occurred in California.[7] Opp. at 4. But in the very next sentence, Plaintiffs claim that no contract was formed. **Plaintiffs cannot have it both ways.**

In either case, the existence of the forum selection clause preempts any application of Maryland's general rule of *lex loci contractus*. *See Invictus Aerospace Grp., LLC v. Point Blank Enters., Inc.*, No. CV ELH-19-2983, 2020 WL 2085464, at *7 (D. Md. Apr. 30, 2020) ("And, Maryland courts follow the rule of *lex loci contractus*, applying the substantive law of the state where the contract was formed, **unless there is a choice-of-law provision in the contract**.") (emphasis added); *see also Rouse Co. v. Fed. Ins. Co.*, 991 F. Supp. 460, 462 (D. Md. 1998) ("The absence of a forum selection clause in the policy requires the Court to follow Maryland's general rule of *lex loci contractus* by looking to the law of the place where the contract was made to determine its meaning and operation."); *Brito v. Major Energy Elec. Servs., LLC*, 526 F. Supp. 3d 95, 110 (D. Md. 2021) (recognizing that "[w]hen a contract contains a choice of law provision, Maryland courts apply § 187(2) of the Restatement (Second) of Conflict of Laws (Am. L. Inst. 1971) ('Restatement of Conflicts'), which states: 'The law of the state chosen by the parties to govern their contractual rights will be applied.'"). In short, Maryland law controls this dispute, as Plaintiffs expressly agreed when they subscribed to CuriosityStream, subject to its Terms of Use.

Plaintiffs also try to avoid the ample body of precedent that CuriosityStream has cited by mischaracterizing its sign-up screen as a "textbook *browsewrap* agreement[]" in which mere use

[7] Under Plaintiffs' theory, each potential class member would be subject to a different state's laws depending on their state of residence, not to mention an inquiry into their actual knowledge of CuriosityStream's Terms of Use. In fact, if there is any question about the sufficiency of the inquiry notice provided on CuriosityStream's website, this case should *only* proceed on the issue of whether Plaintiffs had such knowledge and should nevertheless be compelled to arbitrate.

of the website assumes acceptance of the terms and conditions.[8] Opp. at 2. Here, however, a consumer could not subscribe to CuriosityStream without submitting their payment information and clicking "Sign up now" after being presented with the conspicuous Terms of Use disclosure above on the same screen.

Courts across the Fourth Circuit have enforced arbitration agreements in nearly identical circumstances. For example, in *Melo v. Zumper, Inc.*, a popup window indicating acceptance of the Terms and Conditions was directly below the "Create Account" button, with the Terms and Conditions offset in a light blue color. 439 F. Supp. 3d 683, 699 (E.D. Va. 2020). The Court acknowledged that this "layout and language" provided "the user reasonable notice that a click will manifest assent to an agreement." *Id.* The Court further noted that sign-in wrap agreements are usually upheld if the "notice of the hyperlinked terms and conditions is present on multiple successive webpages of the site," another fact that is established in this case. *Id.* at 698 (quoting *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 401 (E.D.N.Y 2015); Silva Decl. ¶ 10 (stating that "on virtually every page to which a subscriber could navigate on the CuriosityStream website, there appears hyperlinks that similarly link to copies of the Terms of Use"); Silva Reply Decl. ¶ 7.

[8] A browsewrap agreement, however, is one "where a website's terms and conditions of use are generally posted on the website via a hyperlink **at the bottom of the screen**" *and* the user does not have to take any affirmative action. *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394 (9th Cir. 2020) (emphasis added); *Sellers v. JustAnswer LLC*, 289 Cal. Rptr. 3d 1, 20 (Ct. App. 2021) (explaining that with a browsewrap agreement, "the website provider assumes assent is given by mere use of the website"). One notable example of a browsewrap agreement can be found at The Bursor & Fisher website: https://www.bursor.com/privacy-terms/ (last accessed October 25, 2023). Indeed, despite never providing *any* conspicuous notice of these Terms, Bursor & Fisher dictates that simply "[b]y using bursor.com, or any other website owned and operated by Bursor & Fisher, P.A., you agree to be bound by" these Terms. And this is not merely an informational posting, as Bursor includes a Limitation of Liability provision, an Indemnification clause, and a Choice of Law provision selecting New York law. It is therefore difficult to square Plaintiff's counsel's advocacy in this case relative to how they attempt to bind consumers to online terms on their own website.

Similarly, in *Granados*, the Court granted a motion to compel arbitration involving a sign-in wrap agreement wherein the sign-up screen indicated that "acceptance of a separate agreement [the terms and conditions] is required before the user can access the service." *Granados v. Lendingtree LLC*, No. 322CV00504MOCDSC, 2023 WL 1481545, at *2–3 (W.D.N.C. Feb. 2, 2023), *report and recommendation adopted*, 2023 WL 2672830 (W.D.N.C. Mar. 28, 2023). Quoting the Second Circuit's decision in *Meyer*, the Court explained: "**As long as the hyperlinked text was itself reasonably conspicuous** … a reasonably prudent smartphone user would have constructive notice of the terms. While it may be the case that many users will not bother reading additional terms, that is the choice the user makes; the user is still on inquiry notice." *Id.* (*quoting Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 79 (2d Cir. 2017)) (emphasis added); *Payne v. Amazon.com, Inc.*, No. 2:17-cv-2313, 2018 WL 4489275, at *5 (D.S.C. July 25, 2018) ("[A] reasonably prudent offeree would know that he agreed to Amazon's Conditions of Use by clicking the 'Place your order' button when that button appeared directly next to or above a statement hyperlinking to conditions and the statement indicated the user agreed to those conditions by ordering.").

The Court should reach the same conclusion here. Any reasonably prudent consumer would know that they were agreeing to the conspicuously displayed Terms of Use by subscribing to CuriosityStream – as all subscribers are clearly informed.

### C. There is no "California" law controlling here – but common law principles of contract formation that are uniform across states.

Plaintiffs' Opposition is constructed on the false premise that California law applies to whether Plaintiffs bound themselves to CuriosityStream's Terms of Use, *and* that "California law" is somehow unique. Opp. at 4–5. In reality, Plaintiffs present a false conflict. That is, there is no actual conflict between Maryland and California law – a conclusion compelled by the very Ninth

Circuit decision on which Plaintiffs primarily rely. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (holding that "we need not decide which State's law governs" because "New York and California apply 'substantially similar rules for determining whether the parties have mutually assented to a contract term.'") (citing *Meyer, Inc.*, 868 F.3d at 74); *see also Oberstein v. Live Nation Ent.*, 60 F.4th 505, 515 (9th Cir. 2023) (where the potentially applicable foreign states' law "apply substantially similar rules" as California, the Court "need not engage in a detailed choice-of-law analysis"). Thus, in the final analysis, the very limited number of *distinguishable* California cases Plaintiffs cite are in no way binding on the Court.

More fundamentally, conflict-of-law analysis is *only* necessary if there is an actual conflict between states' laws. *See In re TMST, Inc.*, 610 B.R. 807, 819–20 (Bankr. D. Md. 2019) (holding that because there was no meaningful difference between Maryland and other states' law, court would apply forum law); *see also Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir. 2006) (holding that if there is a false conflict, the court does not have to engage in a choice of law analysis). Here, Plaintiffs make no attempt in their Opposition to establish the threshold issue that there is *any* conflict between applicable California and Maryland law for the Court to venture beyond Maryland and this Circuit. For good reason – there is no conflict at issue here.

As an initial matter, "California has a strong public policy in favor of arbitration and **any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration**." *Layman v. J. Rockcliff, Inc.*, 219 Cal. Rptr. 3d 185, 192 (Ct. App. 2017) (emphasis added). And as for basic contract law, again, Plaintiffs' *own authority* makes clear that California follows "generally applicable principles of contract law" that does not materially differ from other states' law, including Maryland. Opp. at 4 (citing *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099 (9th Cir. 2023)); *see also Berman*, 30 F.4th at 855 (California and New York apply substantially similar

rules); *Intellor Grp., Inc. v. Cicero*, CIV. No. TDC-19-0010, 2019 WL 1643549, at *6 (D. Md. Apr. 16, 2019) (no basis to conclude Maryland contract law was "unique or complicated as to prevent a [New York] judge from being able to discern and apply it").

At bottom, Plaintiffs' few decisions on which they rely are not emblematic of a conflict of law between California and the rest of the country, but outlying *and* distinguishable decisions that are non-binding on the Court.[9] The Court therefore can and should apply Maryland and Fourth Circuit precedent to resolve this dispute, which Plaintiffs implicitly concede is fatal to their Opposition.

**D. CuriosityStream still wins under Plaintiffs' cited decisions.**

Even under "California law," the Court must enforce CuriosityStream's Terms of Use and the binding arbitration agreement contained therein. Plaintiffs' Opposition relies heavily on the *Sadlock* case, which, as noted above, Plaintiffs clearly misrepresent in claiming that "plaintiffs, represented by the same firm here . . . were *not* compelled to arbitrate[,]" Opp. at 10, contrary to the case's actual outcome wherein the Court "conclude[d] that there was an agreement to arbitrate and grant[ed] Disney's motion to compel." *Sadlock*, 2023 WL 4869245, at *13.

Just as Plaintiffs misrepresent the outcome in *Sadlock*, their argument that the relevant Disney sign-up screen is similar to CuriosityStream's is equally unavailing on closer inspection of the precise reasons the court found Disney's notice was less than conspicuous. That is, in *Sadlock*, the Court recognized that "that the screen at issue did *not* provide reasonably conspicuous notice based on the totality of the circumstances." *Sadlock*, 2023 WL 4869245, at *9. In reaching this

---

9 "[P]ersuasive authority … is only relevant to the extent of its ability to *persuade*," *Byars v. Hot Topic, Inc.*, No. 22-1652, 2023 WL 2026994, at *11 (C.D. Cal. Feb. 14, 2023) (emphasis in original).

conclusion, the Court analyzed a number of elements which bear no comparison to CuriosityStream's sign-up screen:

| ***Sadlock* Elements** | **Comparison to CuriosityStream** |
|---|---|
| "The Subscriber Agreement is not mentioned at all until, in essence, the bottom of the screen." | A CuriosityStream subscriber must read the disclosure first before proceeding to the sign up button. |
| "The text used in the paragraph that refers to the Subscriber Agreement is not so much white but rather whitish/greyish in color, and thus does not stand out against the black background." | CuriosityStream uses bright white text that clearly contrasts against the black background. |
| "[T]he text used for the term 'Subscriber Agreement' – although blue in color (which concededly indicates a hyperlink) – appears muted and thus does not stand out against the black background." | CuriosityStream uses bright orange text for the hyperlinked "Terms of Use" and "Subscriber Agreement" that is easily distinguishable from the surrounding text and black background. |
| "The hyperlink to the 'Subscriber Agreement' is buried in six lines of text and is located five liens away from the 'Agree and Subscribe' button." | The orange hyperlinks to the "Terms of Use" and "Subscriber Agreement" are in a single, standalone sentence. |
| "There are a number of other elements on the screen that distract from the reference to the Subscriber Agreement," such as "the exhortation" to "Get the best movies, shows and sports" and additional promotional content encouraging subscribers to upgrade. | CuriosityStream does not present any marketing elements on the final subscription page. |

In short, *nearly every* reason the *Sadlock* court considered in determining Disney's notice to be insufficiently conspicuous actually favors CuriosityStream here.[10]

[10] *Berman*, the other case Plaintiffs primarily rely on, is also easily distinguishable because the Ninth Circuit panel there faulted the defendant's use of hyperlinks that "appeared in the same gray font as the rest of the sentence," and its failure to "explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement." 30 F.4th at 854, 858 ("This notice defect could have easily have been remedied by including language such as, 'By clicking the Continue >> button, you agree to the Terms & Conditions.'"). Here, CuriosityStream's Terms of Use hyperlink is conspicuously contrasted (bright orange on black), *and* consumers are informed "*By subscribing to Curiosity Stream*, you agree that you've read our Terms of Use and Privacy Policy." And the Terms of Use subscribers necessarily agree they have read clearly and conspicuously state that the "AFFIRMATIVE ACT OF USING AND/OR REGISTERING WITH THE SITES … SIGNIFIES THAT YOU AGREE TO THESE TERMS

Simply put, California courts routinely enforce online agreements similar to CuriosityStream's. For example, in *Hansen v. Ticketmaster Entertainment, Inc.*, the court was asked to determine whether the plaintiff had constructive notice of Ticketmaster's Terms of Use ("TOU") displayed on a sign-in page providing similar notice as here. No. 20-cv-02685, 2020 WL 7319358 (N.D. Cal. Dec. 11, 2020). The Court held that the notice provided was reasonably conspicuous because (i) "[t]he sign-in page at issue was relatively uncluttered;" (ii) "[t]he proximity of the text to the 'Sign in' button makes the text conspicuous;" (iii) "the text is not markedly smaller than the other text, and the grey is in sufficient contrast to the background which is white;" and (iv) "the phrase 'Terms of Use' appears in blue font so that there is even more contrast." *Id.* at *4; *see also Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394–95 (9th Cir. 2020) (Court of Appeals finding that plaintiff validly assents to terms of given their close proximity to the "Sign In" button); *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020) (holding that parties were bound to arbitrate because the "relevant warning language and hyperlink to the Terms of Use were conspicuous – they were the only text on the webpage in italics, were located directly below the sign-in button, and the sign-in page was relatively uncluttered").

Here, CuriosityStream's notice is supported by a similar set of design factors that provide conspicuous notice – under both Maryland and California caselaw. The Terms of Use are placed in close proximity to the payment information and "Sign up now" button on an uncluttered page. Silva Decl. ¶ 7. The text is not markedly smaller than the surrounding text and the hyperlinks are offset against the black background in a contrasting color – here, bright orange. *See id.* The fact that Plaintiffs may not have read the actual Terms of Use before signing up is no excuse, even

---

OF USE. IF YOU DO NOT AGREE, YOU MAY NOT USE AND/OR REGISTER WITH THE SITES." Thus, even if *Berman* were somehow controlling here, which it is not, this decision would also favor *CuriosityStream*, not Plaintiffs.

under California precedent. *See 24 Hour Fitness, Inc. v. Superior Ct.*, 78 Cal. Rptr. 2d 533, 542 (Ct. App. 1998) ("Reasonable diligence requires the reading of a contract before signing it. A party cannot use his own lack of diligence to avoid an arbitration agreement."); *Bravo v. Charter Commc'ns, LLC,* No. B303179, 2021 WL 1101145, at *6 (Cal. Ct. App. Mar. 23, 2021) (explaining that an employee could not avoid arbitration simply by remaining "willfully, or even negligently, ignorant of the [arbitration] policy" by failing to read the policy). Permitting such behavior would be akin to saying that a consumer need not pay their monthly mortgage because they never bothered to read the hundreds of pages at closing.

At bottom, Plaintiffs' entire Opposition is premised on an unproven "need" to apply "California law" – which by itself should result in the Court applying forum law. But once you get past the few holdings of the California cases cited by Plaintiffs, and analyze the details *why* these courts found notice was not sufficiently conspicuous, these outlying cases are easily distinguishable and inapplicable to CuriosityStream's industry standard subscription process. In short, CuriosityStream's Terms of Use are easily enforceable under California precedent as well.

## III. CONCLUSION

CuriosityStream respectfully requests that the Court order Plaintiffs to arbitrate their claims against CuriosityStream on an individual basis pursuant to the Parties' arbitration agreement and dismiss the Complaint with prejudice.

Dated: October 27, 2023

Respectfully submitted,

*/s/ Laurel LaMontagne*

Laurel LaMontagne, Esq. (No. 21180)
ArentFox Schiff LLP
1717 K Street, NW
Washington D.C., 20006
T: 202-857-6325
F: 202-857-6395
laurel.lamontagne@afslaw.com
*Counsel for Defendant CuriosityStream, Inc.*