IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ROHAN DHRUVA,** *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil No. SAG-23-2265 |
| **CURIOSITYSTREAM INC.,** | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiffs Rohan Dhruva and Joshua Stern, for themselves and others similarly situated, filed this class action lawsuit against Defendant CuriosityStream Inc. ("CuriosityStream"), alleging that CuriosityStream violated the federal Video Privacy Protection Act and California state law by disclosing their personally identifiable information to Facebook. ECF 1. CuriosityStream has filed a Motion to Compel Arbitration and Dismiss. ECF 21. Plaintiff filed an opposition, ECF 23, and CuriosityStream filed a reply, ECF 24.[1] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons stated below, CuriosityStream's motion will be denied.

I.   **BACKGROUND**

The basic facts underlying the transactions are undisputed. CuriosityStream offers documentary films, shows, and series pertaining to science, nature, history, and technology to its subscription customers. ECF 21-2 (Silva Decl.) ¶ 2. Customers subscribe to the service on CuriosityStream's website, https://curiositystream.com. *Id.* ¶ 3. The process of subscribing has remained materially unchanged from March, 2020 to the present. *Id.* ¶ 4 n.1. A customer chooses

---

[1] Plaintiffs also filed a notice of supplemental authority, ECF 25, which played no role in this Court's ruling.

a subscription plan, whether month-to-month or annual. *Id.* ¶ 5. The customer creates an account by entering an email address and selecting a password. *Id.* ¶ 6. Finally, the customer provides payment information. *Id.* ¶ 7. On the screen, immediately above the section to input payment information, there is an advisement: "By subscribing to Curiosity Stream, you agree that you've read our Terms of Use and Privacy Policy." *Id.* The words "Terms of Use" and "Privacy Policy" appear in bright orange and are hyperlinks. *Id.*

Clicking on the hyperlink "Terms of Use" directs the customer to a webpage presenting the current Terms of Use. *Id.* ¶ 8. The Terms of Use have stated the following, in all capital letters: "YOUR AFFIRMATIVE ACT OF USING AND/OR REGISTERING WITH THE SITES SIGNIFIES THAT YOU AGREE TO THESE TERMS OF USE. IF YOU DO NOT AGREE, DO NOT USE AND/OR REGISTER WITH THESE SITES." ECF 21-3 (before May 28, 2020) 21-4 (May 28, 2020 to January 31, 2022); *see* 21-5 (current and substantially similar version).

Under "Dispute Resolution," the Terms of Use have provided that the parties will first try to settle any dispute informally by exchange of written notice. They continue:

> IF ANY DISPUTE CANNOT BE RESOLVED BY THE ABOVE DISPUTE RESOLUTION PROCEDURE, YOU AGREE THAT THE SOLE AND EXCLUSIVE JURISDICTION FOR SUCH DISPUTE WILL BE DECIDED BY BINDING ARBITRATION ON AN INDIVIDUAL BASIS. ARBITRATION ON AN INDIVIDUAL BASIS MEANS THAT YOU WILL NOT HAVE, AND YOU WAIVE, THE RIGHT FOR A JUDGE OR JURY TO DECIDE YOUR CLAIMS, AND THAT YOU MAY NOT PROCEED IN A CLASS, CONSOLIDATED, OR REPRESENTATIVE CAPACITY.

ECF 21-3; ECF 21-4; *see* ECF 21-5 (current and substantially similar version).

In addition, at the times Plaintiffs purchased their subscriptions, on the very first page of CuriosityStream's Terms of Use, it said in bolded font:

> **Please note the arbitration provision set forth below, which may, except where and to the extent prohibited by law, require you to arbitrate any claims you may have against [CuriosityStream] on an individual basis. ARBITRATION ON AN INDIVIDUAL BASIS MEANS THAT YOU WILL NOT HAVE, AND YOU WAIVE, THE RIGHT FOR A JUDGE OR JURY TO DECIDE YOUR CLAIMS, AND THAT YOU MAY NOT PROCEED IN A CLASS, CONSOLIDATED, OR REPRESENTATIVE CAPACITY.**

ECF 21-3; ECF 21-4.

In order to subscribe to CuriosityStream, a customer has to submit the payment information and click a button that reads "Sign up now." Silva Decl. ¶ 7.

## II. LEGAL STANDARDS

Section 2 of the Federal Arbitration Act provides that "agreements to arbitrate [are] 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011) (quoting 9 U.S.C. § 2). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Despite the "emphatic federal policy in favor of arbitral dispute resolution," *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985), a party moving to compel arbitration must prove "a written agreement that includes an arbitration provision which purports to cover the dispute." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) ("[E]ven though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate.") (citation omitted).

## III. ANALYSIS

Plaintiffs contest the existence of an agreement to arbitrate by arguing that the actions Plaintiffs took to subscribe to CuriosityStream on its website did not manifest assent to the

3

Terms of Use.[2] For its part, CuriosityStream contends that its website amounts to a "clickwrap" agreement and that Maryland courts have upheld the validity of such agreements. CuriosityStream is correct that this Court, applying Maryland law, and other courts within the Fourth Circuit have upheld clickwrap agreements where a party has clicked a button to agree to the terms of service when creating an online account. Those courts evaluate whether the website layout reasonably communicates the terms of the agreement and whether it clearly indicates that by clicking the button, the user is agreeing to those terms. *See, e.g.*, *Melo v. Zumper, Inc.*, 439 F. Supp. 3d 683, 697 (E.D. Va. 2020) (noting that the "layout and language of the site" are determinative).

In this case, CuriosityStream has satisfied the first element, but not the second. The layout of the relevant screen on CuriosityStream's website gives the user adequate notice of the Terms of Use. The hyperlink is printed in orange on an uncluttered background, close to the payment tabs that the customer has to fill out and the button that the customer has to click. Nothing about the website design or layout obscures the conspicuous location of the Terms of Use hyperlink, which, if clicked, reasonably communicates the terms of the agreement.

The problem lies in whether Plaintiffs had clear notice that by clicking the "Sign up now" button, they were expressing agreement to CuriosityStream's Terms of Use. The hyperlinked sentence referring to Terms of Use states only, "By subscribing to Curiosity Stream, you agree that you've read our Terms of Use and Privacy Policy." Nothing in that sentence expresses an

---

[2] While the parties disagree as to the appropriate choice of law, this Court finds no meaningful distinction in the law of basic contract formation as it exists in Maryland, California, and the other states cited in the parties' briefing. Each state recognizes that "clickwrap" agreements are valid when a user receives appropriate notice of the contract's terms and are invalid when notice is insufficient. As such, this Court need not determine, at this stage of the proceeding, which law governs the parties' dispute. This Court notes, however, that Plaintiffs' contention that California law governs their claims because they are California residents could, as a practical matter, affect the determination about the proper scope of a class at a later stage in these proceedings.

4

agreement to the Terms of Use or Privacy Policy themselves, simply an agreement that they were read. CuriosityStream contends that had a customer actually read the Terms of Use, the customer would understand that it was agreeing to abide by them by submitting payment information and clicking "Sign up now." The language of the Terms of Use, though, is unhelpful in that regard. It reads, "Your affirmative act of *using and/or registering with the sites* signifies that you agree to these terms of use." ECF 21-3; ECF 21-4 (emphasis added); *see* ECF 21-5 (current and substantially similar version). If that language were binding, then by simply going to the CuriosityStream website and not actually subscribing or registering, a customer could be agreeing to the Terms of Use. Clicking the "Sign up now" button would be immaterial.

Further, that "Sign up now" button does not say "subscribe." While this fact, standing alone, may not have sufficed to defeat the agreement, it contributes additional ambiguity to the calculus of whether a customer would recognize that clicking the button constitutes the "subscribing" required to indicate agreement.

The cases cited by CuriosityStream are all distinguishable in that they make the connection between clicking a button and agreeing to terms much more express than in this case. In *Graham v. Bloomberg L.P.*, a line above the button stated, "By submitting my information, I agree to the Privacy Policy and Terms of Service and to receive offers and promotions from Bloomberg." 22-CV-7015 (VSB), 2023 WL 6037974, at *1 (S.D.N.Y. Sept. 15, 2023). In *McDaniel v. Home Box Office, Inc.*, "subscribers were required to check a box indicating that they agreed to the [Terms of Use] . . . before completing the registration process." 22-CV-1942 (VEC), 2023 WL 1069849, at *1 (S.D.N.Y. Jan. 27, 2023). In *Wilson v. Uber Technologies Inc.*, the court recognized that the Eastern District of New York upheld a clickwrap procedure where "Uber drivers had to click on a 'YES, I AGREE' box twice to indicate assent to Uber's Services

Agreement." Civ. No. DKC 19-2363, 2020 WL 2732086, at *3 (D. Md. May 26, 2020) (quoting *Kai Peng v. Uber Techs. Inc.*, 237 F. Supp. 3d 36, 43 (E.D.N.Y. 2017)). In *Lyles v. Chegg, Inc.*, the court also upheld a clickwrap procedure where the webpage indicated below the sign-up button that, "By clicking 'sign up' you agree to the Terms and Privacy Policy." Civ. No. RDB-19-3235, 2020 WL 1985043, at *4 (D. Md. Apr. 27, 2020). In *Fusha v. Delta Airlines, Inc.*, customers pressed a button stating, "I agree" with a forum selection clause. Civ. No. RDB-10-2571, 2011 WL 3849657, at *3 (D. Md. Aug. 30, 2011). In *CoStar Realty Info., Inc. v. Field*, the court found express and implied consent to a forum selection clause when "[t]he authorized user must scroll through and affirmatively accept the Terms of Use the first time they use CoStar's database, as well as at periodic intervals after the initial use." 612 F. Supp. 2d 660, 665, 669 (D. Md. 2009). In *Jones v. Prosper Marketplace, Inc.*, plaintiffs were presented with a statement on the screen that said, "Clicking the box below constitutes your acceptance of the payment authorization and the borrower registration agreement," which also contained a hyperlink to that agreement. No. GJH-21-893, 2022 WL 834210, at *6 (D. Md. Mar. 21, 2022). In *Melo v. Zumper, Inc.*, directly below the "Create Account" button the webpage said, "By creating a Zumper Account you indicate your acceptance to our Terms and Conditions and Privacy Policy." 439 F. Supp. 3d 683, 699 (E.D. Va. 2020). And finally, in *Granados v. Lendingtree LLC*, the sign-up screen indicated that "acceptance of a separate agreement is required before the user can access the service." No. 3:22-cv-00504-MOC-DSC, 2023 WL 1481545, at *2–*3 (W.D.N.C. Feb. 2, 2023).

Ultimately, the pertinent question is whether a user has "reasonable notice that a click will manifest assent to an agreement." *Melo*, 439 F. Supp. 3d at 699 (citation omitted). Here, because of the wording chosen by CuriosityStream, its users did not. Accordingly,

CuriosityStream's Motion to Compel Arbitration and its related Motion to Dismiss will be denied.[3]

## IV. CONCLUSION

For the reasons set forth above, CuriosityStream's Motion to Compel Arbitration and Dismiss, ECF 21, is DENIED. A separate Order follows.

Dated: November 15, 2023                              /s/
                                                    Stephanie A. Gallagher
                                                    United States District Judge

---

[3] As the class waiver provision is also contained within CuriosityStream's Terms of Use, it too is unenforceable in this context.