**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| ROHAN DHRUVA, et al.<br>Plaintiffs,<br>v.<br>CURIOSITYSTREAM INC.,<br>Defendant. | No. 1:23-cv-02265-SAG |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR RECONSIDERATION**

"In contract law, an offer is always a conditional promise and the offeree has the power to accept the offer and create a contract." *Moore v. Donegal Mut. Ins. Co.*, 239 A.3d 764, 768 (Md. Ct. Spec. App. 2020) (internal quotation marks omitted). Here, both Plaintiffs were presented with a simple three-step process that led to the formation of a contract – and the underlying agreement to arbitrate – in the manner invited by the offer. To recap, CuriosityStream summarizes below the undisputed facts[1] by reference to the basic elements of contract formation:

**The Offer**[2]

(A) In order to register for CuriosityStream's streaming service, CuriosityStream's homepage invites individuals to initiate the process by clicking a button to "Sign Up Now." ECF 24-1 ¶ 4.

---

[1] *See generally*, ECF 21-2 ¶¶ 2-11 and ECF 24-1 ¶¶ 3-8.

[2] "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24.

(B) Individuals are then immediately informed that there are "[**j]ust 3 steps** to the best documentaries on the planet." *Id.* These 3 steps are as follows:

(1) "Confirm **the subscription** that is right for you." *Id.*

(2) "Create your account" and click "Continue to Last Step" button. ECF 21-2 ¶ 6.

(3) "Fill in your payment and you're done!" *Id.* ¶ 7.

(C) Before an individual can pay, however, they are conspicuously informed that "**By subscribing** to CuriosityStream, **you agree** that you've read our **Terms of Use** and Privacy Policy." *Id.*

(D) The *first paragraph* of the ***Terms* of Use** – which all subscribers, including Plaintiffs, **expressly agree** that that they have read – conspicuously states "These Terms of Use ("Terms of Use") apply to all websites, apps, and services operated and controlled by CuriosityStream Inc. . . . These Terms of Use set forth **legally binding terms that govern and restrict your use of the Sites.**" ECF 21-3, 21-4 & 21.5.

**<u>The Form of Acceptance Invited</u>**[3]

(E) The *second paragraph* of the Terms of Use provided that "YOUR AFFIRMATIVE ACT OF USING AND/OR REGISTERING WITH THE SITES SIGNIFIES THAT YOU AGREE TO THESE TERMS OF USE. IF YOU DO NOT AGREE, DO NOT USE AND/OR REGISTER WITH THESE SITES." ECF 21-3, 21-4.

[3] "An offer may invite or require acceptance to be made . . . by performing . . . **a specified act** . . . . Unless otherwise indicated by the language or the circumstances, **an offer invites acceptance in any manner** and by any medium **reasonable in the circumstances**." Restatement (Second) of Contracts § 30 (emphasis added). *See also id.* § 30 cmt. a ("The offeror is the master of his offer. . . . [T]he **offeror is entitled to insist on a particular mode of manifestation of assent**.") (emphasis added).

**<u>The Acceptance</u>**[4]

(F) Plaintiffs admittedly both completed their registration for a CuriosityStream subscription package, *and* continued to use the site after doing so. ECF 20 ¶¶ 43-44, 49-50. And they did this *after* being given "adequate notice of the Terms of Use" which "reasonably communicates the terms of the agreement" – as the Court expressly held. ECF 26 at 4.[5]

**<u>The Consideration</u>**[6]

(G) Plaintiffs admittedly paid for their subscription to CuriosityStream's service, and in exchange received the bargained for streaming service.

Offer, acceptance, consideration. Respectfully, this gets complicated only if one *tries* to make it complicated, *and* ignores the basic contract principles above while doing so. In sum, CuriosityStream's offer consists of a subscription to its educational programs about science, technology, nature and history, subject to its Terms of Use. This subscription is **the only thing someone can register for on the website**. Subscribers do that by registering for the subscription package of their choice, while **expressly agreeing** that they read the *Terms*[7] of Use. And the

---

4 "Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." Restatement (Second) of Contracts § 50.

5 As CuriosityStream previously noted, and which Plaintiffs do not dispute, respectfully the Court appears to misapprehend the holding of cases such as *Melo v. Zumper, Inc.*, 439 F. Supp. 3d 683, 697 (E.D. Va. 2020), which focused on whether the "hyperlink appeared clearly to the user," which CuriosityStream's concededly does. And not only is it conspicuously displayed, the hyperlink is presented with legal consequences: by subscribing, consumers are expressly agreeing that they read the Terms of Use and can thus not (legitimately) claim ignorance about their import.

6 "[A]ny performance which is bargained for is consideration." Restatement (Second) of Contracts § 72.

7 As CuriosityStream previously noted, even more than a decade ago courts were expressly ruling that "it is not too much to expect that an internet user . . . would understand that the hyperlinked phrase 'Terms of Use' is really a sign that says 'Click Here for Terms of Use.'"

Terms of Use expressly and unambiguously invite subscribers to assent to the Terms of Use by registering with *or* using the website. Plaintiffs admittedly did both as they completed the registration process to subscribe to CuriosityStream – and then they paid so they could watch the content to which they subscribed. Again, it is that simple: offer, acceptance, consideration.

CuriosityStream respectfully submits that Plaintiffs' Opposition, ECF 33, essentially reduces down to the argument, "why should we be bound by terms that we expressly agreed we read as a condition of subscribing?"[8] Yet the answer is simple: the Terms of Use clearly and unambiguously define the manner by which CuriosityStream invites acceptance of its offer. And again, this is basic contract law: the "offeror is the master of his offer [and] **is entitled to insist on a particular mode of manifestation of assent**." Restatement (Second) of Contracts § 30 cmt. a (emphasis added).[9] And there is no (legitimate) question that Plaintiffs had *actual notice* of the

---

*Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012). Here, by contrast, Plaintiffs *expressly agreed* that they read the Terms of Use – i.e., that they contractually have *actual notice* of the Terms of Use. Their argument is therefore akin to an attorney claiming, "sure, I agreed that I read the Federal Rules of Civil Procedure, but no one told me I had to follow them." *See* Fed. R. Civ. P. 1. Or more generally, how often do paper contracts actually specify on the signature block, "by signing your name here, you are agreeing to be bound by the terms contained in the preceding pages"? The answer is rarely, if ever. Just as consumers are *expected to know* that signing their name on an agreement has legal significance, so too are consumers when they are presented with "Terms of Use" via a hyperlink online. To be sure, CuriosityStream obtains an *express agreement* that subscribers have actually read the Terms of Use and the unambiguous provisions contained therein, *after* providing conspicuous notice of them, such that there can be no excuse for a subscriber to claim ignorance.

[8] Plaintiffs clearly mischaracterize CuriosityStream's argument by summarizing it as "that [CuriosityStream] clearly communicated what button Plaintiffs needed to click to manifest their assent to arbitrate." Opp. at 3. That gets CuriosityStream's argument precisely backwards – *there is no need to click a button to signify assent* when the Terms of Use – which Plaintiffs expressly agreed that they read – unambiguously specify how assent is to be manifested: by registering and/or continuing to use the site.

[9] Put another way, it turns hornbook contract law on its head by effectively claiming a website operator *must* obtain assent only one way. That is, by only enforcing online agreements that state "by subscribing to CuriosityStream, you agree [to] our **Terms of Use** and Privacy Policy." But if consumers ***expressly agree*** that they read the same Terms of Use, which

Terms of Use: they expressly agreed that "[b]y subscribing to CuriosityStream," they had read the Terms of Use, which unambiguously set forth how acceptance to CuriosityStream's offer would be manifested. Plaintiffs then manifested assent exactly as invited by CuriosityStream.

This is no different than a binding paper contract – an individual cannot avoid their mortgage obligation by claiming that the font is too small, the signature block did not adequately explain the legal significance of a signing, or that they did not read the full document. Ignorance is not a defense here; there has been an offer, acceptance, and exchange of consideration to form a valid contract. To hold otherwise would mean treating online contracts differently than those on paper, and courts have repeatedly held that there is no meaningful difference between "traditional" contracts and those formed online. *See Fteja*, 841 F. Supp. 2d at 839 (explaining that "clicking the hyperlinked phrase is the twenty-first century equivalent of turning over the cruise ticket"); *Hubbert v. Dell Corp.*, 835 N.E.2d 113, 121 (Ill. App. Ct. 2005) (explaining that "[t]he blue hyperlinks . . . should be treated the same as a multipage written paper contract" because "[t]he blue hyperlink simply takes a person to another page of the contract, similar to turning the page of a written paper contract"); *Guadagno v. E*Trade Bank*, 592 F. Supp. 2d 1263, 1267, 1271 (C.D. Cal. 2008) (upholding an arbitration clause when the text next to the box stated "By checking this box, you acknowledge that you have reviewed the ... Agreement ....."); *Snap-on Bus. Sols. Inc. v. O'Neil & Assocs., Inc.*, 708 F. Supp. 2d 669, 682-83 (N.D. Ohio 2010) (upholding terms and conditions when, below an enter button, the page stated that "The use of

---

themselves make unambiguously clear the Terms of Use contain "legally binding terms that govern and restrict your use of the Site" *and* "YOUR AFFIRMATIVE ACT OF USING AND/OR REGISTERING WITH THE SITES SIGNIFIES THAT YOU AGREE TO THESE TERMS OF USE" – this should be a distinction without a difference. Ultimately, the Court is penalizing CuriosityStream for emphasizing that subscribers *should read* the terms they will be subject to, rather than simply click a box.

and access to the information on this site is subject to the terms and conditions set out in our legal statement”).

Ultimately, the fact that Plaintiffs *may* have chosen not to read the Terms of Use, **<u>despite affirmatively agreeing that they had</u>**, does not invalidate the agreement. Not reading an agreement has *never* been a defense. Thus, there simply was no ambiguity, as a matter of law, as to what actions would bind Plaintiffs to the Terms of Use – and Plaintiffs have given up any pretense of arguing that the Terms of Use in effect when they signed up were in any way confusing, let alone ambiguous as a matter of law.[10] Indeed, Plaintiffs conclude with a half-hearted attempt to argue that clicking the “Sign Up Now” button is not synonymous with “registering” or “subscribing” – despite the ample authority CuriosityStream has cited to the contrary, which Plaintiffs do not contest. More than that, they never offer *any other interpretation* – reasonable or otherwise – what these terms can mean other than being entirely synonymous. For good reason, **there is only one thing you can sign up for** on CuriosityStream’s website – a subscription to its streaming service by registering through the simple 3-step process that begins and ends with clicking the “Sign Up Now” button. There simply is no ambiguity to be had – as a matter of law.

## <u>Conclusion</u>

As CuriosityStream established in its Motion for Reconsideration, the Court’s Memorandum Opinion was predicated on a finding of ambiguity that even Plaintiffs never claimed existed. Plaintiffs have removed all doubt in their Opposition that there is *no* ambiguity in the entire subscription process by any objective standard. They simply want to be excused

---

[10] Remarkably, the only “ambiguity” Plaintiffs identify is a “run-on sentence” related to how German users are meant to accept the current Terms of Use. Opp. at 7. This slightly changed verbiage was added *after* both Plaintiffs had already subscribed, and thus Plaintiffs have no standing to complain about it as a threshold matter.

from the unambiguous Terms of Use they bound themselves to after expressly agreeing that they read them during the subscription registration process. At bottom, they indisputably had actual notice that by registering for a subscription and continuing to use the site, they were binding themselves to the Terms of Use. Plaintiffs then proceeded to register – and they should be compelled to arbitrate as a result. It is that simple.

Dated: December 20, 2023

Respectfully submitted,

*/s/ Laurel LaMontagne*

Laurel LaMontagne, Esq. (No. 21180)
ArentFox Schiff LLP
1717 K Street, NW
Washington D.C., 20006
T: 202-857-6325
F: 202-857-6395
laurel.lamontagne@afslaw.com

*Counsel for Defendant CuriosityStream, Inc.*