IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **ROHAN DRUVA,** *et al.*, | * |
| | * |
| **Plaintiffs,** | * |
| | * |
| v. | *   Civil Case No. SAG-23-2265 |
| | * |
| **CURIOSITYSTREAM, INC.,** | * |
| | * |
| **Defendants.** | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiffs Rohan Druva, Joshua Stern, and others similarly situated (collectively "Plaintiffs") filed this case against CuriosityStream, Inc. ("CuriosityStream"), alleging that CuriosityStream violated the federal Video Privacy Protection Act and California state law by disclosing their personally identifiable information to Facebook. ECF 1. On November 15, 2023, this Court issued a Memorandum Opinion, ECF 26 (the "Opinion"), and Order, ECF 27, denying CuriosityStream's Motion to Compel Arbitration and Dismiss, ECF 21. CuriosityStream has moved for reconsideration of this Court's Order, ECF 32. Separately, Plaintiffs have moved to appoint Bursor & Fisher, P.A., as interim class counsel. ECF 28. Both issues have been fully briefed, ECF 33, 34, 35, 39, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, both motions will be DENIED.

I.   **Background**

The alleged facts in this case are set forth in detail in the Court's Opinion, ECF 26, and will not be fully reiterated herein. In relevant part, Plaintiffs subscribed to CuriosityStream's video subscription services on CuriosityStream's website by submitting payment information and, on the same screen, clicking a button that reads "Sign up now." ECF 21-2 ¶ 7. Immediately above the

section to input payment information, there is text that reads: "By subscribing to Curiosity Stream, you agree that you've read our Terms of Use and Privacy Policy." *Id.* A user who clicks on the words "Terms of Use" is directed to CuriosityStream's Terms of Use. *Id.* ¶ 8. The Terms of Use state in all capital letters: "YOUR AFFIRMATIVE ACT OF USING AND/OR REGISTERING WITH THE SITES SIGNIFIES THAT YOU AGREE TO THESE TERMS OF USE. IF YOU DO NOT AGREE, DO NOT USE AND/OR REGISTER WITH THESE SITES." ECF 21-3; ECF 21-4; ECF 21-5. The Terms of Use also contain a binding arbitration clause if any dispute cannot be resolved by exchange of written notice. *See* ECF 21-3; ECF 21-4; ECF 21-5.

In its Opinion, the Court held that the textual notice on the screen to input payment information did not provide a user with reasonable notice that clicking "Sign up now" would manifest assent to CuriosityStream's Terms of Use. ECF 28 at 6. On November 29, 2023, CuriosityStream sought reconsideration of the Court's Opinion. ECF 32. While that motion was pending, CuriosityStream filed a Notice of Appeal in the U.S. Court of Appeals for the Fourth Circuit, ECF 36. The Fourth Circuit has treated the Notice of Appeal as effective upon disposition of the pending reconsideration motion and will docket the appeal following this Court's ruling on the pending motion. ECF 38. On December 21, 2023, this Court stayed the case until resolution of CuriosityStream's reconsideration motion and/or appeal. ECF 41.

Separately, on November 22, 2023, Plaintiffs moved to appoint Bursor & Fisher, P.A., as interim class counsel pursuant to Federal Rule of Civil Procedure 23(g). ECF 28. CuriosityStream opposed the motion, contending that interim class counsel is unwarranted under the present circumstances. ECF 34. Because Plaintiffs withheld opposition to the stay "provided that their pending motion for appointment of interim class counsel is not stayed," ECF 40, the Court will adjudicate both pending motions, beginning with CuriosityStream's Motion for Reconsideration.

II.     **CuriosityStream's Motion for Reconsideration**

    A. **Legal Standards**

Federal Rule of Civil Procedure 54(b) provides that "any order or other decision" that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time" before entry of a final judgment. *See also Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1469–70 (4th Cir. 1991) (approving the trial court's reference to Rule 54(b) in reconsidering its ruling on the defendant's Rule 12(b)(6) motion to dismiss); *Lynn v. Monarch Recovery Mgmt, Inc.*, 953 F. Supp. 2d 612, 618 (D. Md. 2013) ("Motions for reconsideration of an interlocutory order are governed by Federal Rule of Civil Procedure 54(b) . . . ."). In this Court, motions for reconsideration must be filed within fourteen days after the Court enters the order. Loc. R. 105.10.

While the Fourth Circuit has not clarified the precise standard applicable to motions for reconsideration, *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 449 (D. Md. 2015), it has stated that motions for reconsideration "are not subject to the strict standards applicable to motions for reconsideration of a final judgment" under Rules 59(e) and 60(b), *Carrero v. Farrelly*, 310 F. Supp. 3d 581, 584 (D. Md. 2018) (emphasis omitted) (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003)); *see Fayetteville Invs.*, 936 F.2d at 1470 (expressing "vigorous[] disagree[ment]" with a trial court's use of a Rule 60(b) standard in reconsidering its previous order on a Rule 12(b)(6) motion). However, courts in this District frequently look to the standards used to adjudicate Rule 59(e) and 60(b) motions for guidance when considering Rule 54(b) motions for reconsideration. *Carrero*, 310 F. Supp. 3d at 584; *Butler*, 307 F.R.D. at 449; *Cohens v. Md. Dep't of Human Res.*, 933 F. Supp. 2d 735, 741 (D. Md. 2013); *see also Fayetteville Invs.*, 936 F.2d at 1470 (positively discussing a district court's reference, but not strict adherence,

to the Rule 60(b) standards in reconsidering its prior ruling) (citing *Gridley v. Cleveland Pneumatic Co.*, 127 F.R.D. 102 (M.D. Pa. 1989)).

Motions to amend final judgments under Rule 59(e) may only be granted "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). Further, Federal Rule of Civil Procedure 60(b) explicitly provides that a court may only afford a party relief from a final judgment if one of the following is present: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or misconduct by the opposing party; (4) voidness; (5) satisfaction; or (6) any other reason that justifies relief. In light of this guidance, "[m]ost courts have adhered to a fairly narrow set of grounds on which to reconsider their interlocutory orders and opinions." *Blanch v. Chubb & Sons, Inc.*, 124 F. Supp. 3d 622, 629 (D. Md. 2015); *see also id.* ("Courts will reconsider an interlocutory order in the following situations: (1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice." (quoting *Nana-Akua Takyiwaa Shalom v. Payless Shoesource Worldwide, Inc.*, 921 F. Supp. 2d 470, 481 (D. Md. 2013))).

For a previous judgment to be "clear error," the court's decision must be "dead wrong." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009) (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)). Indeed, the Fourth Circuit in *TFWS* used even stronger language in describing the standard for clear error: the prior judgment cannot be "just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old,

4

unrefrigerated dead fish." *Id.* (quoting *Bellsouth Telesensor v. Info. Sys. & Networks Corp.*, 65 F.3d 166 (Table), 1995 WL 520978, at *5 n.6 (4th Cir. Sept. 5, 1995) (unpublished)).

**B. Analysis**

CuriosityStream argues that this Court committed a clear error of law by finding its Terms of Use ambiguous "as to what actions would bind Plaintiffs to the Terms of Use." ECF 32-1 at 8. CuriosityStream maintains that its Terms of Use provide "two unambiguously clear and express methods by which a consumer would be binding themselves" to the Terms of Use, either by (1) using the sites or (2) registering with the sites. *Id.* at 6. These terms, CuriosityStream explains, are not subject to multiple interpretations. Rather, the terms merely establish multiple methods of manifesting assent, "which Plaintiffs expressly agreed that they read" when they clicked "Sign up now." *Id.* at 5, 8. CuriosityStream thus contends that because Plaintiffs had "actual notice of the Terms of Use," ECF 39 at 4–5, they also had "adequate notice" of what was in the Terms of Use, ECF 32-1 at 6.

As a threshold matter, the bulk of CuriosityStream's request for reconsideration misconstrues the ambiguity at issue. The Court did not find that CuriosityStream's Terms of Use were ambiguous as to how a user may manifest assent.[1] Rather, the Court found that Plaintiffs lacked clear notice that by clicking "Sign up now," they were agreeing to CuriosityStream's Terms of Use because the textual notice on the screen above "Sign up now" informs users only that they agreed to have read the Terms of Use—not that they agreed to them. Although the Terms of Use themselves more clearly establish how consumers manifest assent (using or registering with the

---

[1] Nor did the Court find any inherent ambiguity between using two different terms, "Sign up now" and "subscribe." The Court only considered these different terms in the overall context of whether a customer would recognize that clicking "Sign up now" manifested agreement to CuriosityStream's Terms of Use.

site), CuriosityStream does not clearly present this information to users on its "Sign up now" screen.[2]

In all the cases CuriosityStream cited in its original motion, the webpages in question contained more explicit connections between clicking a button and expressing agreement to terms of use. *See, e.g.*, *Lyles v. Chegg, Inc.*, Civ. No. RDB-19-3235, 2020 WL 1985043, at *4 (D. Md. Aug. 30, 2020). The cases CuriosityStream cites for the first time in its reconsideration motion are similarly distinguishable. For example, in *Fteja v. Facebook, Inc.*, the court held that Facebook reasonably communicated its hyperlinked Terms of Use where a sentence immediately below a sign-up page stated, "By clicking Sign Up, you are indicating that you have read *and agree* to the Terms of Service." 841 F. Supp. 2d 829, 835, 840 (S.D.N.Y. 2012) (emphasis added). CuriosityStream ignores this critical fact, relying instead on the court's separate holding that a hyperlink may sufficiently communicate a website's terms of use even though a consumer must take further action to view them. *See id.* at 839–40. Similarly, in *Alminiana v. Lowe's Home Centers LLC*, the court held that Lowe's employees assented to arbitration agreements contained in their employment offer letters by first checking boxes indicating they reviewed and read the terms of the offers letters and *then* selecting "I accept" the terms of the offer with the following relevant language presented: "I agree, and it is my intent, to accept these terms and conditions. By selecting 'I accept' . . . I understand electronically signing and sending this Decision form . . . is the legal equivalent of having placed my handwritten signature on the Offer Letter." Civ. No. 5:20-

---

[2] Additionally, no matter how well CuriosityStream's website layout gives users notice of the *existence of* the Terms of Use, that is not enough if the textual notice fails to communicate that a click will manifest assent to the Terms of Use. *See Melo v. Zumper, Inc.*, 439 F. Supp. 3d 683, 697 (E.D. Va. 2020) ("[T]here is nothing automatically offensive about such agreements, as long as the layout *and language* of the site give the user reasonable notice that a click will manifest assent to an agreement." (emphasis added) (quoting *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017))).

cv-00010-KDB-DSC, 2020 WL 3491837, at *3 (W.D.N.C. June 9, 2020) (citing to a declaration in the record that fully described how an applicant electronically accepted the terms of an employment offer). Again, CuriosityStream relies only on part of that opinion, arguing that the *Alminiana* plaintiffs assented to arbitration solely by acknowledging that they "had read the terms and conditions set forth in the Offer Letter." ECF 32-1 at 7–8 (quoting *Alminiana*, 2020 WL 3491837, at *1). In so doing, CuriosityStream overlooks that prospective employees of Lowe's must have also agreed to the terms of their employment offer letters, not only that they read those terms before accepting employment. Finally, in *Hubbert v. Dell Corp.*, an Illinois state court held that Dell's customers had adequate notice that purchasing computers online would bind them to Dell's terms and conditions of sale based on the statement: "All sales are subject to Dell's Terms and Conditions of Sale." 835 N.E. 2d 113, 121–22 (Ill. App. Ct. 2005). This language also makes it clear that the act of purchasing a Dell computer bound the customer to Dell's terms of sale.

In short, CuriosityStream still has not provided the Court with any authority (binding or otherwise) holding that online users manifest assent to a provider's terms of use simply by agreeing that they have read such terms. CuriosityStream's "disagreements with the Court's analysis, then, simply reargue[s] [its] case and fall[s] far below the 'unrefrigerated dead fish' threshold." *Friend v. AstraZeneca Pharms. LP*, Civ. No. SAG-22-3308, 2023 WL 4867514, at *1 (D. Md. July 31, 2023) (quoting *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009)). Thus, the Court sees no basis for reconsidering its decision.[3]

---

[3] The Court is also unpersuaded that its judgment results in manifest injustice to CuriosityStream simply because of the "expense and resources" that a putative class action lawsuit entails. ECF 32-1 at 2.

### III. Plaintiffs' Motion to Appoint Interim Class Counsel

#### A. Legal Standards

Rule 23(g)(3) of the Federal Rules of Civil Procedure allows courts "to designate interim counsel to act on behalf of the putative class before determining whether to certify the action as class action." The Court may appoint "interim counsel during the pre-certification period if necessary to protect the interest of the putative class." FED. R. CIV. P. 23(g) advisory committee's notes to 2003 amendment. However, "appointment of counsel before certification of the class is ordinarily unnecessary." *Ademiluyi v. PennyMac Mortg. Inv. Trudt Holdings I, LLC*, Civ. No. ELH-12-0752, 2015 WL 575362, at *7 (D. Md. Feb. 10, 2015); *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.11 (2004) ("If the lawyer who filed the suit is likely to be the only lawyer seeking appointment as class counsel, appointing interim class counsel may be unnecessary."). "Those cases in which interim counsel is appointed are typically those in which a large number of putative class actions have been consolidated or are otherwise pending before a single court." *Santos v. Carrington Mortg. Servs., LLC*, Civ. No. 2:15-cv-864 (WHW-CLW), 2017 WL 215969, at *2 (D.N.J. Jan. 18, 2017) (quoting *White v. TransUnion, LLC*, 239 F.R.D. 681, 683 (C.D. Cal. 2006)). In those situations, "designation of interim counsel clarifies the responsibility for protecting the interest of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.11.

#### B. Analysis

Plaintiffs contend that it is necessary to appoint interim class counsel because three law firms have brought a similar action against CuriosityStream in the Southern District of Florida. *See* ECF 35 at 6–20. Plaintiffs also allege that two other law firms are "actively soliciting clients

to pursue" similar claims against CuriosityStream. *Id.* at 3; *see* ECF 28-1 at 2. According to Plaintiffs, the presence, or potential presence, of these law firms means "bona fide potential for rivalry and uncertainty" because "none of the other five firms have reached out to Plaintiffs' counsel . . . about jointly pursuing any claims against [CuriosityStream]." ECF 35 at 3. CuriosityStream has opposed the motion, contending that interim class counsel is unnecessary under the circumstances.[4]

The Court finds appointment of interim class counsel unwarranted at this juncture. There are no "overlapping, duplicative, or competing suits pending in other courts," MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.11, "nor is there a gaggle of law firms jockeying to be appointed class counsel," *Parrish v. Nat'l Football League Players, Inc.*, No. C 07-00943 WHA, 2007 WL 1624601, at *9 (N.D. Cal. June 4, 2007). That another set of law firms has filed a related action against CuriosityStream does not automatically create a "rivalry or uncertainty between counsel as to who should be appointed lead counsel." *Pam Kagan Mktg. Inc. v. Navisite, Inc.*, Civ. No. WDQ-07-3094, 2008 WL 11509445, at *4 (D. Md. May 21, 2008) (appointing interim class counsel when two sets of plaintiffs in a consolidated action contested who should be appointed class counsel). Similarly, the potential for "tag-a-long lawsuits and competing firms in the future" do not justify appointing interim class counsel. *In re Seagate Tech. LLC Litig.*, Case No. 16-cv-00523-RMW, 2016 WL 3401989, at *4; *see In re Nest Labs Litig.*, Case No. 14-cv-01363-BLF, 2014 WL 12878556, at *1 (N.D. Cal. Aug. 18, 2014) (declining to appoint interim class counsel with "potential other 'tag-along' lawsuit[s] on the horizon"); *Wolf v. W.L. Gore & Assocs., Inc.*, Civ. No. RDB-23-280, 2023 WL 5627326, at *2 (D. Md. Aug. 31, 2023) (same). Though Plaintiffs

---

[4] CuriosityStream did not have the opportunity to discuss whether the newer action, *Tejon v. CuriosityStream*, affected its position because that suit was filed after CuriosityStream filed its opposition brief.

suggest that other law firms "may be pursuing parallel mass arbitrations in the shadows" resulting in potentially "inconsistent judgments or collusive settlements," these are nothing more than conclusory and speculative assertions. ECF 28 at 2–3 & n.1; *see In re Seagate Tech. LLC Litig.*, 2016 WL 3401989, at \*4. In fact, "[t]here is but one case now before the Court, and there is little confusion that it is the responsibility of [Bursor & Fisher P.A.] to protect the interests of the putative class." *Burns v. Navistar, Inc.*, Case No. 10CV2295-LAB (BGS), 2011 WL 13071147, at \*2 (S.D. Cal. Feb. 24, 2011).

Plaintiffs rely on several inapposite cases, where multiple complex class actions placed the interests of the putative class in jeopardy. For example, in *Mejia v. Time Warner Cable, Inc.*, the court appointed interim class counsel because there were "multiple potentially overlapping class actions, germane appellate proceedings, and dispositive motions filed," which "only underscore[d] the importance of safeguarding the interests of putative class members." 15-cv-6445 (JPO), 2016 WL 11707569, at \*4 (S.D.N.Y. Dec. 15, 2016); *see id.* (noting that the "currently pending dispositive motions might substantially transform this action and impact its potential relationship with [another] action"). In *Torliatt v. Ocwen Loan Servicing, LLC*, the court found it appropriate to appoint interim class counsel so that a plaintiff could object to a nationwide settlement in another jurisdiction. Case No. 19-cv-04303-WHO, 2020 WL 10964876, at \*4 (N.D. Cal. Oct. 2, 2020). As the court observed, the settlement "carved [the plaintiff] and other named plaintiffs out of the putative class" rendering interim class counsel necessary to protect the interests of the class. *Id.*; *see also Razo v. AT&T Mobility Servs., LLC*, No. 1:20-cv-00172-NONE-HBK, 2021 WL 4988866, at \*1 (E.D. Cal. Oct. 27, 2021) (finding the facts and reasoning of *Torliatt* applicable in appointing interim class counsel). And finally, in *Jacob Rieger & Co. v. Cincinnati Insurance Co.*, the court appointed interim class counsel because (1) there were "multiple, overlapping, and duplicative

class actions" in the same court; (2) a "competition for leadership" was "likely to emerge" given that the defendant had been sued in more than 100 related cases across the country; (3) and "unique circumstances" requiring "efficient and speedy resolution" of the case created a need to "protect the interest of the class by clarifying precertification responsibilities." Case No. 20-cv-00681-SRB, 2020 WL 9421046, at *2–*4 (W.D. Mo. Dec. 7, 2020). Unlike those cases, Plaintiffs here have not presented any reason for why the presence, or potential presence, of other law firms alone, place the interests of this putative class in jeopardy.

Because the Court does not find appointing class counsel necessary at this point, the Court does not reach the question of whether Plaintiffs' counsel meet the factors outlined in Rule 23(g)(1) of the Federal Rules of Civil Procedure. *Gibson v. MGM Resorts Int'l*, Case No. 2:23-cv-00140-MMD-DJA, 2023 WL 4455726, at *2 (D. Nev. July 11, 2023).

### IV.   CONCLUSION

For the reasons set forth above, Defendant CuriosityStream's Motion for Reconsideration, ECF 32, is DENIED, and Plaintiffs' Motion to Appoint Bursor & Fisher, P.A., as Interim Class Counsel, ECF 28, is also DENIED. A separate Order follows.

Dated:  January 17, 2024                                              /s/
                                                                Stephanie A. Gallagher
                                                                United States District Judge